# BURKE, MIELE & GOLDEN, LLP

30 MATTHEWS STREET
SUITE 303A
POST OFFICE BOX 216
GOSHEN, N.Y. 10924
(845) 294-4080

FAX (845) 294-7673

PATRICK T. BURKE
ROBERT M. MIELE *
RICHARD B. GOLDEN
MICHAEL K. BURKE

DENNIS J. MAHONEY, III
KELLY M. NAUGHTON**
KARIN T. ANTIN

JOSEPH P. MCGLINN (1941-2000)
* ADMITTED IN NEW YORK & NEW JERSEY
** ADMITTED IN NEW YORK & MASSACHUSETTS

ROCKLAND COUNTY OFFICE:
100 WASHINGTON AVENUE
POST OFFICE BOX 397
SUFFERN, N.Y. 10901
(845) 357-7500
(845) 357-7321 (FAX)

REPLY TO:  ☐  ORANGE CO.
           ☐  ROCKLAND CO.

Respond to Post Office Box

July 25, 2008

Honorable Colleen McMahon
United States District Court
300 Quarropas Street
United States District Court
White Plains, New York 10601

Re: United States v. Tarquin McClusky 07 CR 678-01 (CM)

Dear Judge McMahon:

I am writing on behalf of Tarquin McClusky who is to be sentenced on Friday August 1, 2008, upon his guilty plea to one count of possession of child pornography. For the reasons set forth below, we urge the Court to sentence Tarquin to a non-guideline sentence.

I attach the following exhibits for the Court's consideration in connection with sentencing:

Exhibit A – Character letter – Wife, Cathleen McClusky – dated December 10, 2007

Exhibit B – Clinical Assessment of McClusky children by Jacinta "Cindy" Marschke Ph.D., LCSW, SAP dated April 22, 2008

Exhibit C – Character letter – Reverend Thomas W. Fiet – Pastor of McClusky family – dated March 17, 2007

Exhibit D – Polygraph Report and Curriculum Vitae of Frank J. Lazzara dated August 31, 2007

Exhibit E – Report by Irene Caccese, B.S., CASAC, NCACII of VMC Consulting dated April 2, 2007

Exhibit F – Character letter – Paul J. Greicius – Friend of McClusky – dated December 2, 2007

Exhibit G – Character letter – Mark Fiscaletti – General Manager at Meineke Car Care Center of Kingston, NY

Exhibit H – Character letter – Joseph LaManna – Owner of Meineke Car Center of Kingston, NY

Exhibit I – Character letter – Stanfield Hill – attends Sexaholics Anonymous with McClusky – dated December 1, 2007

Exhibit J – Character letter – Todd Robinson – friend with McClusky since seventh grade

Exhibit K – Character letter – Wanda McClusky – mother of McClusky

Exhibit L – Character letter – Joseph Ladanyi – Church family friend of McClusky

Exhibit M – Character letter – Sally Pardee – Friend of McClusky for 30 years

Exhibit N- NY Daily News, June 29, 2004

I

**BACKGROUND**

Tarquin McClusky has pled guilty to possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Mr. McClusky's sentencing guideline range is 97 to 121 months. We would respectfully urge that a sentence within the guideline range would be unduly severe for a 42 year old man, father of three children who has never been in trouble before his arrest in this case. For the reasons set forth below, we respectfully that a sentence between 24 to 36 months would be a reasonable, not greater than necessary sentence.

On December 21, 2006, Tarquin McClusky was arrested in Newburgh, New York at his place of employment, Federal Express, where he had worked for the past twelve years as a mechanic. As a result of this arrest Mr. McClusky was immediately terminated from his job.

Tarquin is married to Cathleen McClusky and they have three children, a son Tyson who is seventeen, a daughter Constanza who is fifteen and a son Elias who is ten years old.

Tarquin and his family have been devastated as a result of his arrest. The McCluskys are a closely knit and caring family of very moderate means. Tarquin's employment was the primary source of income for the McClusky family and obviously because Tarquin was terminated from Federal Express there has been a significant collateral economic impact on his family. His wife Cathy works part time as a consultant as an Early Interventionist Education Specialist. Cathy has been diagnosed as bipolar and obsessive compulsive disorder. Ms. McCloskey's mental disorder has, understandably, been greatly affected by Tarquin's arrest and prosecution. Their youngest child, Eli, also suffers from depression. Because Tarquin has lost his job he also lost his family's health insurance benefits that enabled his wife and son to seek the necessary mental health treatment. This treatment has been interrupted by Tarquin's termination from Federal Express and discontinuance of health benefits.

Taquin has also been the only support for his elderly mother who has had several heart procedures and who suffers from a heart condition and emphysema, and is on oxygen. As a condition of bail and, as is now required under the Adam Walsh Act, Tarquin has been on electronic monitoring and was not permitted to leave his home other

than for his employment for the past 20 months. Pre-trial services have also closely monitored Mr. McClusky and have reported that he is compliant with all conditions and has met all scheduled appointments.

## II

## Sex Offender Specific Treatment
## Reports and Findings

After his arrest, in order to address the sexual nature of the offense, pre-trial services arranged for Tarquin to be examined by Dr. N.G. Berrill, a Forensic Psychologist. On January 17, 2007, Mr. McClusky was examined by Dr. Berrill's office. Dr. Berrill's report indicates that he first started viewing and trading adult pornography on the internet two years before his arrest. For approximately one year before his arrest he began viewing child pornography "once a month" and "on average less than one hour per week." (Berrill report p. 8 Exhibit E) In comparison, he states that he view adult pornography "5 hours per week" and he stated that he began looking at child pornography "out of curiosity". (Berrill report p. 8 Exhibit E) Dr. Berrill's report indicates that Mr. McClusky denied masturbating to the images of child pornography; denied "viewing non-pornographic images of children/minors for the purposes of sexual gratification" and "denied chatting on line in sexual manner with minors."(Berrill report p. 9-10 Ex. E) Furthermore, when he was chatting with adults on line he would often engage in fantasy chats taking on the persona of older or younger men in order "cater to what [the person he was chatting with] wanted to hear." (Berrill report p. 10 Ex. E) Along those lines, Mr. McClusky engaged in a fantasy chat with the undercover in this matter where both the undercover and Mr. McClusky made up stories about sexually abusing

their children. The undercover, acting in the role of a single mother, discussed that she would sexually abuse her daughter and niece and video taped these exploits. In kind, Mr. McClusky responds he that too sexually abused his children.

Mr. McClusky statements about abusing his children are untrue. While such discussions are unexplainable, disturbing, and bizarre they are not grounded in reality. To address these troubling statements Mr. McClusky was polygraphed. The polygraph examination was conducted by Frank Lazzara, a retired FBI agent who served as an agent for twenty-give years and was trained by the Bureau at Department of Defense Polygraph School at Fort McClellan, Alabama. During his tenure with the FBI, Mr. Lazzara spent 12 years conducting polygraph examinations for the Bureau in criminal matters and matters of national security. (Exhibit D – Lazzara Curriculum Vitae)

On August 30, 2007, Mr. Lazzara conducted a polygraph examination in which he asked the following relevant questions:

1. Q: Have you ever engaged in any type of sexual activity with any of your children?

   A: No.

2. Q: Have you ever engaged in any type of sexual activity with your children or any other child?

   A: No.

The examiner concluded that the recorded responses to these questions are <u>NOT</u> indicated of deception. (Exhibit D – Polygraph report)

Based solely on Mr. McClusky statements that are contained in the federal criminal complaint, Mr. McClusky was removed from his home for four and half months

5

and the Child Protective Services and Dutchess County Department of Social Services charged him in family court in Dutchess County with petitions of abuse and neglect of his three children. Investigators were assigned by the office of Child Protective Services and a law guardian was assigned to the children. The three children and his spouse were interviewed and the investigation revealed no evidence of abuse and that the children now 17, 15 and 10 wanted their father to be able to return home. Ultimately the abuse charges were dismissed and the neglect charges were adjourned in contemplation of dismissal to be dismissed and sealed in six months.

The issue of abuse of the McClusky children was also explored by Irene Caccese, the sex offender specific counselor who found that no abuse occurred. (Caccese report p. 2 Exhibit E).

Based on Dr. Berrill's conclusions he recommends that Mr. McClusky be viewed as a "low to moderate risk" with respect to dangerousness to the community and a "high risk" with regard to inappropriate sex activity on the internet. (Berrill report p. 14 Exhibit E). Dr. Berrill also highly recommends that Mr. McClusky participate in sex offender specific counseling and that his internet activity be monitored while on supervision. (Berrill report p. 14 Exhibit E)

Tarquin has been receiving extensive specific sex offender counseling from Irene Caccese, B.S., CASAC, NCACII, the director for VMC Consulting. Tarquin has been attending individual weekly sessions with Ms. Caccese since January 30, 2007. Ms. Caccese reports, based on Tarquin's ongoing therapy, that he does not exhibit pedophilia tendencies and does not appear to meet the criteria of pedophilia. (Caccese report p. 2 Exhibit E) Ms. Caccese has treated and examined Mr. McClusky for the past seven

months on a weekly basis. Ms. Caccese opines that Mr. McClusky does not pose a danger to his family or the community. (Caccese report p. 2 Exhibit E)

In addition to his sessions with Ms. Caccese, Mr. McClusky attends "SA" (Sexaholic Anonymous) meetings twice a week and is participating in phone meetings two to three times per week. Mr. McClusky now has recognized and appreciates the dangers and problems of child pornography and continues to attend therapy and counseling sessions.

## III

## APPLICATION OF THE 3553(a) MANDATE AND FACTORS WARRANTS A NON-GUIDELINE SENTENCE FOR TARQUIN MCCLUSKY

The overriding principle of 3553(a) requires a district court to impose a sentence "sufficient, but not greater than necessary," to satisfy the four purposes of sentencing set forth in 3553(a)(2). The four purposes of sentencing set forth in 3553(a)(2) are: (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant and (D) to provide the defendant with the needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

The overriding principle of imposing a sentence that is sufficient *but not greater than necessary* to achieve these ends requires that the Court must also take into account 18 U.S.C. § 3582, especially when considering rehabilitation, the fourth purpose of sentencing under 3553(a)(2)(D). (emphasis supplied) 18 U.S.C. § 3582(a) states that the

7

court, in analyzing the 3553(a), factors must recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation.

In determining whether the sentence is sufficient to comply with the 3553(a)(2) purposes of sentencing factors listed in § 3553(a). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the kinds of sentences available;
>
> (3) the now advisory sentencing guidelines and policy statements;
>
> (4) the need to avoid unwarranted sentencing disparity; and
>
> (5) the need to provide restitution where applicable.

None of these factors are to be given greater emphasis than another. However, all of the factors are subservient to the overriding mandate to impose a sentence not greater than necessary.

### a.  3553(a)(1) Nature of the Offense and Characteristics of the Defendant

When analyzing the characteristics of the defendant one must read 3553(a)(1) in conjunction with 18 U.S.C. § 3661 which provides that "no limitation shall be placed on the information concerning the background character and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the court can consider a variety of factors regarding the defendant's background and character such as:  his age, his mental and emotional maturity level, and educational or vocational skills. In considering those factors to the case, Irene Caccese, Tarquin's sex offender specific counselor who has seen Tarquin on a

weekly basis for over the past nineteen months, opines that he does not appear to be at risk to return or repeat the offending behaviors.

In addition, Tarquin's post arrest rehabilitation is also a compelling factor to consider. Post arrest rehabilitation efforts have been taken into account by the Court when reviewing a defendant's motion for a downward departure. See, *United States v. Seethaler*, 2000 WL 137670*1(N.D.N.Y. 2000) citing, *United States v. Core*, 125 F3d 74, 78 (2nd Cir. 1997). See also, *United States v. French*, 02 CR 6090 (W.D.N.Y.)(granting defendant's request for a downward departure in child pornography case from a sentence range of 27-33 months to four years probation because of extraordinary rehabilitation and family circumstances). Ms. Caccese found that Tarquin does not present himself as a pedophile and has been addressing his issues in counseling. Lastly, Tarquin's continued dedication to his family and finding employment to support them despite the looming criminal charges and inevitable prison sentence is testament to this man's character.

### b. The kinds of sentences available (3553(a)(3)) and the need to avoid unwarranted sentencing disparity (3553(a)(6))

Since the guidelines are non-mandatory, the sentencing table restrictions on probation are also advisory.

The need to avoid unwarranted sentencing disparities is also a factor that can be considered where there is "disparate treatment between federal and state court sentences in similar cases." *United States v. Wilkerson*, 411 F.3d 1, 10 (1st Cir. 2005) Such is the case here. Of the seventy-seven prosecutions for possession of child pornography handled by the Westchester County District Attorney's Office, fifty-five have resulted in non-jail

9

dispositions. The remaining defendants have been sentenced to shock incarceration or a couple of weekends. (Exhibit N – NY Daily News, June 29, 2004) It would seem under the general language of 18 U.S.C. §3553(a)(6) (instructing courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct") that such a disparity could be considered under the advisory Guideline system. The Second Circuit has not foreclosed for defendants the issue of state disparity in sentencing. *See United States v. McDaniel*, 175 Fed.Appx. 456, 459 (2d Cir. 2006) (noting that the defendant's sentence was reasonable "[e]ven assuming that McDaniel is correct and the District Court could have considered" the disparity between his federal sentence and the sentence he would have received under state law).

Moreover, the deterrent purpose of sentencing will be sufficiently met by the probation department's supervisory random searches and computer monitoring to deter any further illegal activities.

The defense believes that the suggested sentencing range of 97-120[1] months for a person with *no* criminal history is greater than necessary to reflect either the seriousness of the offense, the need for deterrence, to protect the public from further crimes of this defendant, or to provide any treatment which may be appropriate. This is a man who admittedly violated the law. Since committing this crime, his conduct has been everything one would hope for in a productive citizen: he worked steadily, maintained a loving relationship with his wife and family, and met his financial obligations. Rather than seeking a departure under any of the bases set forth in the Guidelines, Mr. McClusky requests the Court to review the driving factors behind how the suggested sentencing

---

[1] The Guideline's range of 97-121 months is limited by the 10 year statutory maximum applicable to this case.

range was arrived at, whether those factors adequately address risk factors presented by this individual defendant, and to sentence Mr. McClusky accordingly.

### c. The offense level in this case overstates the severity of the offense

Mr. McClusky disagrees with the severity of the suggested punishment for this particular offense as a potential basis for a sentence below the suggested Guidelines range.

We are in no way attempting to minimize Mr. McClusky's conduct before the Court. If it were not for him and people like him who are the perverse audience for this material it would not be as prevalent on the internet. The children who are depicted are abused and exploited in the most horrific and disgusting way. Mr. McClusky's chats with the undercover are also disturbing and vile.

In this case Mr. McClusky didn't physically touch anyone. He didn't attempt to physically touch anyone. He has never sexually abused his children or any other child. He possessed images. He shared images. For this conduct, the Sentencing Guidelines suggests that he should be sentenced at or near the statutory maximum for this behavior. Because the Guidelines leave *no* lee-way to account for those who may commit the same offense but have a more severe criminal history, there is something inherently wrong with the manner in which this suggested range has come to be. Given the history of the development of this Guideline, it appears to be an artifact of interference by Congress with the Commission's mission to implement § 3553(a) considerations, rather than due to any reflection of the exercise of the Commissions' particular area of expertise.

Section 2G2.2 used to be quite simple when it was first conceived. It set a base offense level of 13 and had a few means of enhancement, such as material involving

11

prepubescent minors. *See* U.S.S.G. § 2G2.2 (Nov. 1, 1987). The only amendment the Commission appears to have made on its own to this section is in adding a specific offense characteristic of masochistic conduct in 1990. *See* U.S.S.G., App. C., amend. 325 (eff. Nov. 1, 1990).

All of the rest of the material amendments to this section have not been due to any research performed by the Commission, but rather in response to specific congressional directives. For instance, the Commission increased the base offense level from 13 to 15 and adding the specific offense characteristic of engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. This amendment was in reaction to a specific directive of Congress and not due to the Commission's expertise in gathering sentencing data. *See id.*, amend. 372 (eff. Nov. 1, 1991). The next amendment to this guideline occurred in 1996, when the Commission again raised the base offense level, this time from 15 to 17. It also added a two-level specific offense characteristic for the use of a computer. As in 1991, the changes were due to specific directives of Congress and not due to the Commission's particular sentencing expertise. *See id.*, amend 537 (eff. Nov. 1, 1996). The same is true of the 2000 amendment, which linked the specific offense characteristic for distribution for profit to the loss table contained in former U.S.S.G. § 2F1.1, as well as making other changes to § 2G2.2(b)(2). *See* U.S.S.G., App. C., amend. 592 (eff. Nov. 1, 2000). It is also true for the 2003 amendment which added a specific offense characteristic for the number of images involved. This amendment was in response to a specific congressional directive and not due to any research performed by the Commission. *See id.*, amend. 649 (eff. May 30, 2003). The next material amendment to the guideline basically brought the section to the form it now possesses and increased

the base offense level to the two-tiered 18 for possession and 22 for distribution. As with most of the prior amendments, these were in direct response to congressional directives. *See id.*, amend. 664 (eff. Nov. 1, 2004).

What the above illustrates is the problem which occurs when Congress does not allow the Commission to do the job for which it was created: careful evaluation of not only individual crimes and enhancements, but also of the overall balance of the Federal Sentencing Guidelines in light of core sentencing considerations. Congress does not regularly deal with the Guidelines, and therefore is not necessarily aware of the effect which setting specific offense characteristics have on an overall possible guideline range.

This inference is supported by the fact that the Commission did not begin providing Congress with sentencing statistics until February 10, 2005. *See* United States Sentencing Commission, Final Quarterly Data Report, Fiscal Year 2007 [Report], available online at http://www.ussc.gov/sc_cases/Quarter_Report_Final_07.pdf.

The offense level of 30 overstates the severity of the offense in this case for a variety of reasons. For instance, the offense involved the use of a computer, a specific offense enhancement mandated by Congress. However, the use in this case was not very sophisticated and directly led to the discovery of the crime. Most child pornography cases do involve the use of a computer. Given the prevalence of this characteristic, rather than being an enhancing factor, it is merely a normal factor.

His sentencing range is increased by four levels for sadistic or masochistic conduct. He didn't perpetrate this conduct. There is no evidence that he is especially interested in sadistic or masochistic sex. He had a *large* collection, a *small* portion of which contained representations which qualify as sado-masochistic. The fact of the

13

matter is, a wide variety of conduct qualifies for this enhancement. *See e.g. United States v. Hoey*, 508 F.3d 687, 691 (1st Cir. 2007)("We agree with the many circuits which have found that images depicting the sexual penetration of young and prepubescent children by adult males represent conduct sufficiently likely to involve pain such as to support a finding that it is inherently 'sadistic' or similarly 'violent' under the terms of section 2G2.2(b)(4).") The fact that an image of a pre-pubescent minor is already accounted for in a separate specific offense characteristic would seem as if it were double-counting, if the image also qualifies for the sadistic conduct enhancement. In the context of the small number of such images in Mr. McClusky's images the four-level increase appears to be overly punitive and does not address the individual characteristics of this particular defendant. There is nothing to say that the harm in the image's "continued circulation," is not accounted for by the four-level increase imposed for a distribution offense.

Finally, Mr. McClusky's offense level is increased due to the number of images possessed as being more than 600. The PSR reflects that Mr. McClusky possessed 345 images images, plus 14 videos, of child pornography. (PSR ¶ 23) Due to the fact that each video is counted as 75 images, his offense level is increased by one level. Instead of being increased by four levels for possessing at least 300 but fewer that 600 images, the offense level is increased by five levels for possessing more than 600.

The numbers enhancement is a particular problem when individuals download pornography indiscriminately, which is what it appears Mr. McClusky did. *See* PSR at ¶ 23 (reflecting discovery of hundreds of images of pornography, of which were stills of child pornography and 14 of which were videos of child pornography). He does not have specific folders for specific kinds of pornography.

Increasingly, courts appear to be coming to this same conclusion. Of the 1,025 cases sentenced under U.S.S.G. § 2G2.1 in fiscal year 2007, only 649 were sentenced within the guideline range. Of the 376 cases sentenced outside the guideline range, 25 were above the recommended range. This means that 351 cases were sentenced below the range. Of these, the vast majority, 227 were non-guideline downward departures. *See* Report at 14, Table 5. Of the 256 cases considered to be below-range sentences based on *Booker* § 3553, the median sentence imposed was 60 months, which coincidentally is the mandatory minimum for distribution offenses. *See id.* at 24, Table 24.

      **d.**    **The offense level overstates the need to protect the public from further crime and the need for deterrence**

Mr. McClusky falls into Criminal History Category I because he has *no* prior criminal history points. He has no points because he has no prior convictions. In fact Mr. McClusky has no prior contact with the criminal justice system and his criminal history would be more aptly referred to as criminal history category "0" if there was such a category. This is an area in which the Sentencing Commission has done a bit of homework. In its 15-year report, if found that defendants who fall into Category I due to *no* prior criminal history points are the *least* likely to re-offend. *See* United States Sentencing Commission, Recidivism and the First Offender at 13-14 (May, 2004)(reflecting recidivism rate of 11.7 percent for offenders with 0 criminal history points, as opposed to a 22.6 percent rate for those with one criminal history point), available online at http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf. The demographic information, including a significant work history, lack of drug use, education, and other socially beneficial traits, tend to describe those who have no

criminal history points. *See id.* at 6-8. Therefore, it appears that a lengthy sentence to protect the public is not a factor that weighs against Mr. McClusky. Rather, it is one which indicates that a lengthy sentence is not necessary in this case.

As for deterrence, most people do not realize that a first offender would receive nearly a statutory maximum sentence, but would expect rather than one closer to the minimum. A sentence at or near the statutory maximum for a first offender may promote derision for the law "if the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 128 S.Ct. 586, 599 (2007). Therefore, the statutory factor of protecting the public and deterrence are undermined by imposing the sentence suggested by the Guidelines.

    e.    **The Court possesses the authority to carefully review the recommended sentence in light of the individual circumstances presented by the means wherein Mr. McClusky came to commit this crime, as well as his personal characteristics**

As recently confirmed by the United States Supreme Court, a sentencing judge "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 128 S.Ct. at 596. However, the Guidelines are not the only consideration which must be made in sentencing. Rather, a judge must independently evaluate the appropriate sentence in light of the purposes set forth in 18 U.S.C. § 3553(a) and must consider arguments that the Guidelines should not apply on general policy grounds, case-specific grounds, or "regardless." *See Rita v. United States*, 127 S.Ct. 2456, 2463, 2465, 2467-68 (2007). In doing so, the sentencing court "may not presume that the Guidelines range is reasonable." *Gall*, 128 S.Ct. at 596-97. *See also*

*Rita*, 127 S.Ct. at 2465 (same). Rather, the judge must make sentencing determinations in light of the over-arching statutory provision indicating that the sentence imposed is "'sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007). Because the Guidelines are only advisory, "the sentencing court may not mechanically assume that the GSR frames the boundaries of a reasonable sentence in every case." *United States v. Martin*, No. 06-1983, slip op. at 8 (1st Cir. Mar. 21, 2008).

In commenting on the manner in which district courts should interpret the recent sentencing changes, starting with *United States v. Booker*, 543 U.S. 220 (2005) and most recently including the decision in *Gall, supra*, the First Circuit reaffirmed that sentencing "necessitates a case-by-case approach, the hallmark of which is flexibility." *Martin*, slip op. at 9. In imposing a just sentence, courts are required to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Id.*, *quoting Gall*, 128 S.Ct. at 598. As such, "sentencing becomes a judgment call, and a variant sentence may be constructed 'based on a complex of factors whose interplay and precise weight cannot even be precisely described.'" *Martin*, slip op. at 10, *quoting United States v. Vega-Santiago*, No. 06-1558, slip op. at 7 (1st Cir. Feb. 21, 2008)(en banc).

Sentencing courts have a duty toward the individual who stands before them, first and foremost, but they also have a duty to examine the Guidelines in an effort to make the Guidelines better. In *Rita*, Justice Breyer described the intended evolution of the Guidelines, saying that the Commission's work is "ongoing" in that it is required to

collect statements of reasons when district courts impose non-guideline sentences. It does so that it "can revise the Guidelines accordingly." *Id.* at 2464. This evolutionary ideal can only be realized when district courts disagree with the Guidelines when warranted by policy considerations and communicate those disagreements to the Commission through their sentencing decisions. The Supreme Court followed up on this theme in *Gall*, indicating the need for a thorough explanation of reasons for a non-guideline sentence in light of the fact that, although many of the Guidelines are the product of "extensive empirical evidence," the Court recognized that "not all of the Guidelines are tied to this empirical evidence." *Gall*, 128 S.Ct. at 594 and n.2.

## CONCLUSION

Mr. McClusky did possess child pornography. He did transmit that pornography to others. He did so in a foolish and unthinking manner. His actions demand that he be punished.

Given Tarquin's, recognition and acceptance of the dangers of child pornography, the unlikelihood of recidivism, his post arrest rehabilitation, and the collateral impact on his wife, children and elderly mother, it is respectfully requested that for these reasons and the other reasons set forth above we urge the Court to grant a variance in this case and impose a non-guideline sentence of anywhere between 24 to 36 months.

Dated: July 25, 2008
Goshen, New York

Respectfully submitted,

*Michael K. Burke* (signature)

Michael K. Burke, Esq. (7554)
Burke, Miele & Golden, LLP
30 Matthews Street, Suite 303A
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

To: Anna Skotko, Esq.
Assistant United States Attorney
United States Courthouse
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Emily P. Frankelis
Senior U.S. Probation Officer
United States Probation Office
Southern District of New York
233 Broadway
New York, New York 10279